309 F.3d 1166
 BIODIVERSITY LEGAL FOUNDATION; Montana Native Plant Society-Flathead Chapter; Washington Native Plant Society-Northeast Chapter; Peter Lesica, an individual; Southwest Center for Biological Diversity; Bonnie Dombrowski, an individual; Maricopa Audubon Society; Huachuca Audubon Society; Utah Environmental Congress; Oregon Natural Desert Association; Oregon Trout; Native Fish Society; Oregon Chapter of Trout Unlimited, Plaintiffs-Appellants-Cross-Appellees,
v.
Anne BADGLEY, Regional Director of the U.S. Fish & Wildlife Service, Region 1; Jamie Rappaport-Clark; Gale A. Norton,* Secretary, Department of Interior, Defendants-Appellees-Cross-Appellants.
 No. 00-35076.
 No. 00-35089.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 5, 2001.
 Filed November 4, 2002.
 
 COPYRIGHT MATERIAL OMITTED COPYRIGHT MATERIAL OMITTED Daniel J. Rohlf, and Stephanie M. Parent, Pacific Northwest Environmental Advocacy Center, Seattle, WA, for the plaintiffs-appellants.
 M. Alice Thurston, United States Department of Justice, Washington, D.C., for the defendants-appellees.
 James B. Dougherty, Washington, D.C., for the amicus curiae.
 Appeal from the United States District Court for the District of Oregon; Garr M. King, District Judge, Presiding. D.C. Nos. CV-98-01093-KI, CV-00-396-KI.
 Before T.G. NELSON, GRABER and RAWLINSON, Circuit Judges.
 ORDER
 The opinion filed on March 21, 2002, slip op. 4661, and appearing at 284 F.3d 1046, is withdrawn and replaced with the attached opinion.
 OPINION
 RAWLINSON, Circuit Judge:
 
 
 1
 Biodiversity Legal Foundation, several environmental groups, and individuals ("Appellants") appeal the district court's partial grant of summary judgment in favor of Appellees, the Department of Interior and the United States Fish and Wildlife Service ("the Service"). The district court ruled that the Service has discretion under 16 U.S.C. § 1533 (the Endangered Species Act ("ESA")) to make substantial information findings beyond the twelve-month deadline imposed for warranted/not-warranted findings. We reverse and hold that the only way to interpret subsection (b)(3)(A) in harmony with subsection (b)(3)(B) is by limiting the Service's discretion under (b)(3)(A) to the firm deadline imposed by subsection (b)(3)(B).
 
 
 2
 In its cross-appeal, the Service appeals the district court's denial of the Service's request for additional time within which to make three court-ordered warranted/not-warranted findings in dispute. The district court held that, under the ESA, it lacked equitable discretion to grant relief to allow the government the time requested to make the statutory determinations. We affirm the district court's conclusion and hold that the ESA forecloses the exercise of discretion when the agency misses ESA-imposed deadlines.
 
 FACTUAL BACKGROUND
 
 3
 Appellants sued the Department of Interior and the Service for failing to comply with the listing deadlines set forth in 16 U.S.C. § 1533. The suits emerged in the following manner: On February 23, 1995, Appellants filed a petition to list as an endangered species the Spalding's Catchfly (Silene spaldingii). At the time this litigation commenced, the Service had not yet made the initial finding. On July 10, 1995, Appellants petitioned the Service to list the southern California population of the Mountain Yellow-Legged Frog (rana muscosa) as threatened or endangered. Although the substantial information finding for the frog was issued pursuant to a court order in an unrelated case, the Service had failed to issue a warranted/not-warranted finding by the time this litigation commenced.[1]
 
 
 4
 In 1997, Appellants petitioned to list the Great Basin Redband Trout (Oncorhynchus mykiss ssp.) as threatened or endangered. Although the Service had published the substantial information finding for the Redband Trout, it had yet to issue a warranted/not-warranted finding when this litigation began. In 1998, Appellants petitioned the Service to list the Yellow-Billed Cuckoo (Coccyzus americanus) as endangered. As with the other species involved in this suit, the Service had yet to act on this petition at the time this litigation commenced.[2] Following the decision below, the Service made all the requested listing determinations in accordance with the district court's order.
 
 STATUTORY FRAMEWORK
 
 5
 The ESA authorizes the Secretary of the Interior to classify species of plants and animals facing extinction as endangered or threatened.[3] 16 U.S.C. § 1533(a). It sets forth procedures the Service is required to follow in making its determinations. 16 U.S.C. § 1533(b). Embracing citizen participation in the listing process, Congress has afforded any "interested person" the opportunity to petition the Service to list a species:
 
 
 6
 (A) To the maximum extent practicable, within 90 days after receiving the petition ... to add ... or ... remove a species ... the Secretary shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted....[4]
 
 
 7
 (B) Within 12 months after receiving a petition that is found under subparagraph (A) to present substantial information indicating that the petitioned action may be warranted, the Secretary shall make one of the following findings:
 
 
 8
 (i) The petitioned action is not warranted....
 
 
 9
 (ii) The petitioned action is warranted....
 
 
 10
 (iii) The petitioned action is warranted, but ... [precluded].[5]
 
 
 11
 16 U.S.C. § 1533(b)(3)(A)-(B).
 
 
 12
 Once a petition is filed, the Service has ninety days within which to make an initial determination "[t]o the maximum extent practicable." § 1533(b)(3)(A). If the initial determination is positive, the Service has one year from the date the petition was received to make a final determination. Ore. Natural Res. Council, Inc. v. Kantor, 99 F.3d 334, 338-39 (9th Cir.1996).
 
 
 13
 As a result of our decision in Kantor, the current state of the law is that the Service has discretion to extend the initial determination beyond ninety days; however, the Service is required to make a final determination on positive petitions within twelve months of receipt. Unfortunately, as a practical matter, if the initial determination has not been completed within twelve months, the final one has not been completed either.
 
 
 14
 The district court in this case ruled that the initial determination can be made at any time, in accordance with the Service's guidelines. But the final determination on positive petitions must be made within one year of the initial determination. Thus, the Service has the discretion to take three, four, or even five years to make the initial determination. However, if that determination is positive, the Service is already in violation of the twelve-month deadline for the final determination. That is exactly what happened in this case.
 
 
 15
 Although we ruled in Kantor that the twelve-month deadline is firm, no circuit court has specifically decided whether § 1533(b)(3)(B) places a limit on the discretion conferred in § 1533(b)(3)(A). That question is squarely before us now.
 
 DISCUSSION
 I. Jurisdiction
 
 16
 Before we reach the merits of this appeal, we must address the Service's challenge to our jurisdiction. The Service alleges that Appellants' claims are moot because the Service has completed the action requested by Appellants—i.e. decisions to list the four plant and animal species as endangered or threatened. The Service also asserts that Appellants have failed to establish standing.
 
 A. Standing
 
 17
 To satisfy Article III's standing requirement, Appellants must demonstrate: (1) they suffered or will suffer an "injury in fact" that is concrete, particularized, and actual or imminent; (2) the injury is fairly traceable to the Service's challenged action; and (3) the injury is likely, not merely speculative, and will be redressed by a favorable decision. Cantrell v. City of Long Beach, 241 F.3d 674, 679 (9th Cir.2001). Standing is determined as of the commencement of litigation. White v. Lee, 227 F.3d 1214, 1243 (9th Cir.2000).[6]
 
 
 18
 Because eight of the ten appellants are organizations, they must satisfy three additional prerequisites to sue on behalf of their members: (1) their members must otherwise have had standing to sue on their own behalf; (2) the interests at stake must be germane to the organizations' purposes; and (3) neither the claim asserted nor the relief requested must require the participation of individual members in the lawsuit. United Food And Commercial Workers Union Local 751 v. Brown Group, Inc., 517 U.S. 544, 553, 116 S.Ct. 1529, 134 L.Ed.2d 758 (1996).
 
 
 19
 The eight organizations and associations have satisfied the prerequisites to bring suit on behalf of their members. The individual members of the organizations have concrete injuries, and any harm resulting from the challenged action will be borne individually. They would therefore otherwise have standing to sue on their own behalf. Additionally, this suit is germane to each organization's purpose. Finally, unlike a claim for money damages, neither the claim asserted nor the relief requested requires the participation of individual members in this lawsuit.
 
 
 20
 Each organization and association that petitioned on behalf of the Spalding's Catchfly alleged that its staff, members, and supporters derive scientific, aesthetic, and spiritual benefits from the plant's continued existence in its natural habitat. Each organization and association which petitioned on behalf of the Great Basin Redband Trout, the southern population of the Mountain Yellow-Legged Frog, and the Yellow-Billed Cuckoo also alleged that its staff, members, and supporters derive scientific, aesthetic, and spiritual benefits from the species' continued existence in the wild and from the ecosystems upon which they depend. The individual appellants allege the same interests.
 
 
 21
 Appellants' desire to use, observe, and study the stated plant and animal species is undeniably a cognizable interest for purposes of standing. Lujan v. Defenders of Wildlife, 504 U.S. 555, 562-63, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Appellants' interests face specific and concrete injury because the Service's failure to list the Spalding's Catchfly, the Great Basin Redband Trout, the southern population of the Mountain Yellow-Legged Frog, and the Yellow-Billed Cuckoo will result in continued threats to their existence.
 
 
 22
 The dissent acknowledges our precedential holding in Portland Audubon Society v. Endangered Species Comm., 984 F.2d 1534, 1537 (9th Cir.1993) "that environmental groups have Article III standing if they allege procedural violations in an agency process in which they participated." The dissent seeks to distinguish Portland Audubon on the basis that Plaintiffs' claim in this case "is not that things were done improperly, but that things were not done at all for a time." However, a claim that the agency failed to comply with its governing statute is by definition a claim that "things were done improperly." The dissent's attempted distinction to the contrary is unpersuasive.
 
 
 23
 The Service further asserts that Appellants lack standing to challenge delay in the listing program generally. The Service specifically challenges the district court's exercise of its discretion to grant declaratory relief by ruling that a delayed substantial information finding that precludes the Service from complying with the twelve-month deadline, is unlawful.
 
 
 24
 Congress granted federal courts the authority to issue declaratory judgments through the Declaratory Judgment Act:
 
 
 25
 In a case of actual controversy within its jurisdiction, [exceptions omitted] ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.
 
 
 26
 28 U.S.C. § 2201(a). The purpose of the Declaratory Judgment Act is to give litigants an early opportunity to resolve federal issues to avoid "the threat of impending litigation." Seattle Audubon Soc'y v. Moseley, 80 F.3d 1401, 1405 (9th Cir.1996) (per curiam). The Act was also intended to help defendants, like the Service, who have faced numerous lawsuits, "avoid a multiplicity of actions by affording an adequate, expedient, and inexpensive means for declaring in one action the rights and obligation[s] of the litigants." Id. The district court had jurisdiction to entertain Appellants' request for declaratory relief if there was a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (internal quotation marks and citation omitted). The parties were immersed in a substantial controversy regarding the proper interpretation of the ESA's deadline provisions; they have litigated similar cases before; and there are analogous cases pending in other federal courts. Accordingly, the district court acted within its jurisdictional limits when ruling on this case.
 
 B. Mootness
 
 27
 As a prerequisite to our exercise of jurisdiction, we must also satisfy ourselves that this case is not moot. Cole v. Oroville Union High Sch. Dist., 228 F.3d 1092, 1098 (9th Cir.2000), cert. denied, 532 U.S. 905, 121 S.Ct. 1228, 149 L.Ed.2d 138 (2001). An actual controversy must exist at all stages of the litigation. Arizonans for Official English, 520 U.S. at 45, 117 S.Ct. 1055. When a controversy no longer exists, the case is moot. Kasza v. Browner, 133 F.3d 1159, 1172 (9th Cir. 1998). We review mootness, a question of law, de novo. Tinoqui-Chalola Council of Kitanemuk & Yowlumne Tejon Indians v. United States Dep't. of Energy, 232 F.3d 1300, 1303 (9th Cir.2000).
 
 
 28
 Appellants sought two remedies in district court:[7] (1) to compel the Service to make the requested listing determinations; and (2) to declare that 16 U.S.C. § 1533 requires the Service to make initial listing determinations within twelve months after receiving a petition. In effect, Appellants sought to have the district court declare that the Service's interpretation of 16 U.S.C. § 1533 is erroneous. As ordered, the Service completed all the listing determinations encompassed within Appellants' complaints. Therefore, according to the Service, there is no longer a case or controversy.
 
 
 29
 A case or controversy remains if the Service's allegedly wrongful delay is capable of repetition, yet evading review. See Schaefer v. Townsend, 215 F.3d 1031, 1033 (9th Cir.2000).
 
 
 30
 The Supreme Court established the "capable of repetition, yet evading review" ("repetition/evasion") exception to the general principle of mootness in Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911). The exception applies only where "(1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again." Greenpeace Action v. Franklin, 14 F.3d 1324, 1329 (9th Cir.1993).
 
 
 31
 The duration component of the repetition/evasion analysis is present where "the underlying action is almost certain to run its course before either this court or the Supreme Court can give the case full consideration." Id. at 855 (quoting Miller v. Cal. Pac. Med. Ctr., 19 F.3d 449, 453-54 (9th Cir.1994)). For example, in Greenpeace Action v. Franklin, 14 F.3d at 1329-30, we held that a regulation in effect for less than a year satisfied the durational component because a year is not enough time for judicial review. In Alaska Ctr. for the Env't v. U.S. Forest Serv., 189 F.3d 851, 855 (9th Cir.1999), we held that two years was still not enough time to allow for full litigation. 189 F.3d at 855. In sum, an issue that "evades review" is one which, in its regular course, resolves itself without allowing sufficient time for appellate review. In cases such as this, where the challenged conduct is a failure to act, it is difficult to determine with precision whether future conflicts will run their courses before being fully litigated, because the duration of the controversy is solely within the control of the defendant.
 
 
 32
 Nonetheless, we find the duration component of the repetition/evasion exception satisfied because once litigation is filed to compel the Service to make a listing determination, disputes are routinely too short in duration to receive full judicial review.
 
 
 33
 Appellants contend that the Service exhibits a pattern of making listing determinations shortly after suit is commenced. To support this allegation, Appellants point to eight cases in which listing determinations were made shortly after litigation commenced, effectively ending the controversies. There are indeed a number of district court cases in which listing determinations were made shortly after litigation began. See, e.g., Klamath Siskiyou Wildlands Center v. Babbitt, 105 F.Supp.2d 1132, 1134 (D.Or.2000) (holding that suit to list six species was mooted by final listing); Center for Biological Diversity v. Clark, 2000 WL 1842942 (N.D.Cal. 2000) (listing after suit was filed rendered case moot); Biodiversity Legal Foundation v. Babbitt, 63 F.Supp.2d 31, 33 (D.D.C.1999) (making of preliminary finding mooted injunctive relief).
 
 
 34
 Although the Service points to one case in which a challenged failure to make an initial finding made its way to the appeals court, on the whole, listing decisions are routinely made before cases are fully litigated.[8] We therefore find the duration component of the repetition/evasion exception satisfied.
 
 
 35
 The second component of the repetition/evasion exception to the mootness doctrine requires a probability that the challenged action will affect the Appellants in the future. See Meyer v. Grant, 486 U.S. 414, 417 n. 22, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988). This requirement is met. Appellants' litigation history with the Service, in conjunction with the pending petitions it has filed with the Service, reflects that Appellants have a reasonable expectation that they will again litigate the issue of the extent of the Service's discretion to delay making a twelve-month finding. In denying the Service's motion to dismiss for mootness, the district court acknowledged that Appellants had been parties in five other actions in which the Service made either the ninety-day or twelve-month finding after litigation began. As the district court noted: "Although the species at issue change, these parties have been through the same controversy many times, with the lawsuits appearing to spur the [Service] into action."[9]
 
 
 36
 The United States Supreme Court has articulated the following test for mootness in the context of a case, like this one, in which a plaintiff seeks declaratory relief:
 
 
 37
 The question is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Maryland Casualty Co. v. Pacific & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941).
 
 
 38
 Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 122, 94 S.Ct. 1694, 40 L.Ed.2d 1 (1974). The Supreme Court held that the district court had a duty to decide the merits of the declaratory judgment claim even though the request for an injunction had become moot. Id. at 121-22, 94 S.Ct. 1694. We have recently echoed the same theme in Skysign Int'l Inc. v. City and County of Honolulu, 276 F.3d 1109, 1114-15 (9th Cir.2002), noting that the cessation of conduct does not necessarily render a declaratory judgment moot. Accordingly, there is no barrier to our exercise of jurisdiction in this case.
 
 II. Discretion in Making the Initial Finding
 
 39
 We review a decision to grant or deny summary judgment de novo. Llamas v. Butte Cmty. Coll. Dist., 238 F.3d 1123, 1126 (9th Cir.2001). The Service interprets the time limit for making initial listing determinations under 16 U.S.C. § 1533(b)(3)(A) independently of the one-year limitation imposed in subsection (b)(3)(B). Under the Service's interpretation, it has ninety days "[t]o the maximum extent practicable" to make the initial listing determination under (b)(3)(A); but if it is not practicable to complete the determination within ninety days, the finding may be delayed indefinitely. We disagree with the Service's interpretation.
 
 
 40
 Although we give deference to an agency's construction of a statutory provision it is charged with administering, Amer. Fed'n of Gov't Employees v. Fed. Labor Relations Auth., 204 F.3d 1272, 1274-75 (9th Cir.2000), we must reject those constructions that are contrary to clear congressional intent or that frustrate the policy Congress sought to implement. Eisinger v. Fed. Labor Relations Auth., 218 F.3d 1097, 1100-01 (9th Cir.2000).
 
 
 41
 It is an elementary canon of construction that an interpretation which gives effect to all sections of a statute is preferred. Colautti v. Franklin, 439 U.S. 379, 392, 99 S.Ct. 675, 58 L.Ed.2d 596, (1979) (limited by Webster v. Reprod. Health Servs., 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989)). The Service's interpretation would render subsection (b)(3)(B) inoperative. The only way to give effect to both deadline provisions is to apply the twelve-month deadline to both the initial and final determinations.
 
 
 42
 Additionally, "Congress from the outset recognized that timeliness in the listing process is essential." Ctr. for Biological Diversity v. Norton, 254 F.3d 833, 839 (9th Cir.2001). "During subsequent revisions of the ESA, Congress expressed particular concern for species that had languished for years in status reviews." Id. at 839-40 (citation and internal quotation marks omitted). While the Service asks us to embrace an interpretation of the ESA in which listings could admittedly take years, it is apparent that Congress passed the 1982 amendments for the very purpose of curtailing the process.
 
 
 43
 Subsection (b)(3)(B) imposes a firm twelve-month deadline for making final determinations. Kantor, 99 F.3d at 338-39. If the final determination must be made within twelve months, the only logical conclusion is that the initial one must be made within that time as well. Our conclusion is not inconsistent with the Tenth Circuit's decision in Biodiversity Legal Found. v. Babbitt, 146 F.3d 1249 (10th Cir.1998). In that case, Biodiversity Legal Foundation ("Biodiversity"), one of the parties to this action, asserted that the phrase "maximum extent practicable" places a limit on the Service's discretion. Id. at 1253. Specifically, Biodiversity argued that the LPG could not be used to extend initial listing determinations beyond ninety days. Id. It asserted that the Service could exceed the ninety-day limitation only if making a listing determination within ninety days "was impracticable." Id.
 
 
 44
 The Tenth Circuit ruled that "[t]he 1997 LPG's prioritization ... is consistent with the language and legislative history of section 4(b)(3)(A)." Id. at 1255. However, the court expressly limited its review "to assessing whether the 1997 LPG is a reasonable interpretation of section 4(b)(3)(A) in light of the entire statutory scheme." Id. at 1255-56. The Tenth Circuit never addressed the issue whether the Service's discretion under subsection (b)(3)(A) was limited by subsection (b)(3)(B). That is the issue we now decide. We rule that Congress intended to limit the flexible deadline governing the initial listing determination by enacting the firm deadline for making the final determination. Both determinations must be made within one year. See Norton, 254 F.3d at 838-40.
 
 III. Cross-Appeal
 
 45
 On cross-appeal, the Service contends that: (1) the district court erred in determining that it had to compel the Service to act when the Service failed to meet the ESA deadline; and (2) that the district court was obliged to consider the agency's prioritization of its mandatory duties in determining whether the action in question was "unlawfully withheld" or "unreasonably delayed."
 
 A. Proceedings Below
 
 46
 Appellants brought this claim under both the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, and the Endangered Species Act's citizen suit provision, 16 U.S.C. § 1540(c) & (g). Persuaded by the Tenth Circuit's ruling in Forest Guardians v. Babbitt, 174 F.3d 1178, 1187 (10th Cir.1999), the district court implicitly held that the grant of injunctive relief was authorized under the judicial review sections of the APA. The district court adopted the following Forest Guardians holdings: (1) "when the Secretary fails to comply with a statutorily imposed absolute deadline, it has unlawfully withheld agency action"; and (2) the APA "requires the court to issue an injunction when the Secretary misses deadlines under the ESA." See id. at 1191. The district court then issued an injunction requiring the Service to make the requested final determinations.
 
 
 47
 B. The District Court's Grant of Injunctive Relief to Appellants
 
 
 48
 The Service posits that the district court erred in its ruling that the court lacked discretion to refrain from granting injunctive relief. Although we review the district court's decision to grant a permanent injunction for an abuse of discretion, Walters v. Reno, 145 F.3d 1032, 1047 (9th Cir.1998), we review the rulings of law relied upon by the district court in awarding injunctive relief de novo. Hilao v. Estate of Marcos, 95 F.3d 848, 851 (9th Cir.1996).
 
 
 49
 The APA provides the judicial standard of review in this case. Envtl. Prot. Info. Ctr. v. Simpson Timber Co., 255 F.3d 1073, 1078 (9th Cir.2001). "Under the APA,[10] a court may set aside an agency action if the court determines that action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law." Id. (citations and internal quotation marks omitted).
 
 
 50
 As discussed above, Congress imposed a twelve-month deadline for final determinations under the ESA. "Congress intended the petitioning process to interrupt [] the department's priority system by requiring immediate review." Norton, 254 F.3d at 840 (citation, internal quotation marks and emphasis omitted). The Service's failure to comply with the twelve-month deadline is not in accordance with the ESA, the governing law.[11]
 
 
 51
 Appellees correctly assert that a statutory violation does not always lead to the automatic issuance of an injunction. See Weinberger v. Romero-Barcelo, 456 U.S. 305, 313, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982). However, a review of Supreme Court precedent reveals that, when federal statutes are violated, the test for determining if equitable relief is appropriate is whether an injunction is necessary to effectuate the congressional purpose behind the statute. See TVA v. Hill, 437 U.S. 153, 194, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978).
 
 
 52
 In TVA, the Supreme Court examined a violation of Section 7 of the ESA and did not balance the equities. Id. at 193-95, 98 S.Ct. 2279. Instead, the Court ruled that effectuating Congress' clear intent required issuance of an injunction, regardless of the equities involved. Id. Similarly, in Sierra Club v. Marsh, 816 F.2d 1376, 1383 (9th Cir.1987), we noted:
 
 
 53
 In Congress's view, projects that jeopardized the continued existence of endangered species threatened incalculable harm: accordingly, it decided that the balance of hardships and the public interest tip heavily in favor of endangered species. We may not use equity's scales to strike a different balance.
 
 
 54
 Id. (citation omitted).
 
 
 55
 While neither this court nor the Supreme Court has yet ruled that an injunction must issue when the Service fails to comply with Section 4 of the ESA, as it has for violations of Section 7, Congress' purpose for passing the ESA applies to both provisions. Regardless of whether the Service failed to comply with Section 7 or Section 4 of the ESA:
 
 
 56
 Congress has established procedures to further its policy of protecting endangered species. The substantive and procedural provisions of the ESA are the means determined by Congress to assure adequate protection. Only by requiring substantial compliance with the act's procedures can we effectuate the intent of the legislature.
 
 
 57
 Id. at 1384.
 
 
 58
 In TVA, the Supreme Court held that the clear objectives and language of Congress in passing the ESA removed the traditional discretion of courts in balancing the equities before awarding injunctive relief. "Congress has spoken in the plainest of words, making it abundantly clear that the balance [of equities] has been struck in favor of affording endangered species the highest of priorities." TVA, 437 U.S. at 194, 98 S.Ct. 2279. Subsequent Supreme Court cases reinforced the holding of TVA and solidified the rule that, in the context of the ESA, "Congress [has] foreclosed the exercise of the usual discretion possessed by a court of equity." Weinberger, 456 U.S. at 313, 102 S.Ct. 1798; see also Amoco Prod. Co. v. Village of Gambell, Alaska., 480 U.S. 531, 543 n. 9, 544-45, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987).
 
 CONCLUSION
 
 59
 For the preceding reasons, we hold that both the initial finding and the final determination must be completed within twelve months of the date the petition is received. The Service's failure to complete the listing determinations within the mandated time frame compelled the court to grant injunctive relief. The court had no discretion to consider the Service's stated priorities.
 
 
 60
 We REVERSE the district court's grant of partial summary judgment in favor of Appellees, and hold that the Service does not have discretion under 16 U.S.C. § 1533 to make substantial information findings beyond the twelve-month deadline imposed for warranted/not-warranted findings. We AFFIRM the district court's denial of the Service's request for additional time within which to make the warranted/not-warranted findings in dispute. The exercise of discretion is foreclosed when statutorily imposed deadlines are not met.
 
 
 61
 AFFIRMED IN PART, REVERSED IN PART.
 
 
 62
 Appellants are awarded costs on appeal.
 
 
 
 Notes:
 
 
 *
 Gale A. Norton is substituted for her predecessor, Bruce Babbitt, as Secretary of Interior. Fed. R.App. P. 43(c)(2)
 
 
 [1]
 This finding reflects the Service's conclusion regarding whether the petitioned action is or is not warranted
 
 
 [2]
 The Service's explanation for the delays is budgetary
 
 
 [3]
 The Secretary has delegated the implementing authority to the Service. 50 C.F.R. § 402.01(b) (1986)
 
 
 [4]
 This "substantial information" determination will be referred to as the initial finding or determination
 
 
 [5]
 This "warranted/not-warranted" determination is sometimes referred to as the final determination or the twelve-month finding
 
 
 [6]
 It is not clear whether the Service alleges that Appellants have to establish standing to bring this appeal. Nonetheless, if it is determined that Appellants had standing at the time this case was filed, "mootness" rather than "standing" becomes the proper inquiry on appealWhite, 227 F.3d at 1243; see also Arizonans for Official English v. Arizona, 520 U.S. 43, 68 n. 22, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997). We will discuss mootness later.
 
 
 [7]
 Appellants also sought to have the Listing Priority Guidance ("LPG") declared invalid. That request has been relinquished on appeal
 
 
 [8]
 InBiodiversity Legal Foundation v. Babbitt, 146 F.3d 1249 (10th Cir.1998), the listing did not occur due, in part, to Congress' enactment of a rider to the appropriations bill, rescinding $1.5 million of the 1995 listing budget, and prohibiting the Service from spending previously appropriated funds on the listings. Emergency Supplemental Appropriations and Rescissions for the Department of Defense to Preserve and Enhance Military Readiness Act of 1995, Pub.L. No. 104-06, 109 Stat. 73, 86 (1995).
 
 
 [9]
 The same analysis applies to the Service's cross-appeal; thus, we have jurisdiction over that issue as well
 
 
 [10]
 16 U.S.C. 1540(g)(1) provides: "[t]he district courts shall have jurisdiction ... to enforce any such provision or regulation, or to order the Secretary to perform such act or duty."
 
 
 [11]
 The Service urges us to apply the TRAC factors developed inTelecommunications Research & Action Ctr. v. FCC, 750 F.2d 70, 80 (D.C.Cir.1984), and considered by us in Brower v. Evans, 257 F.3d 1058, 1068 (9th Cir. 2001). However, in Brower, we were considering whether there was an unreasonable delay in the absence of a firm deadline. Id. In this case, Congress has specifically provided a deadline for performance by the Service, so no balancing of factors is required or permitted.
 
 
 GRABER, Circuit Judge, dissenting:
 
 63
 I respectfully dissent for two reasons. First, after the United States Fish and Wildlife Service (Service) moved for summary judgment, Plaintiffs failed to satisfy their evidentiary burden to establish that they had standing. Therefore, the district court lacked jurisdiction over the action. Second, the case is moot. Therefore, we lack jurisdiction over the appeal. I will address each of those jurisdictional defects in turn.
 
 A. Standing
 
 64
 Plaintiffs failed to meet their evidentiary burden on the question of standing. The district court implicitly treated standing as having been established by the allegations in the complaint. However, because the elements of standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way at as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of litigation." Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Thus, at the summary judgment stage of the proceedings, "the plaintiff can no longer rest on `mere allegations,' but must `set forth' by affidavit or other evidence `specific facts,' which for purposes of summary judgment motion will be taken to be true." Id. (quoting Fed.R.Civ.P. 54(e)).
 
 
 65
 In the present case, at the summary judgment stage, Plaintiffs did not establish standing through affidavits or similar evidence. Neither did the Service, in its answer or in response to a request for admissions, admit the allegations that support standing. Consequently, the district court erred in asserting jurisdiction, and we have no choice but to vacate the district court's grant of summary judgment. It matters not that we have come late to the party on this issue. "The jurisdictional element of standing must be met in every case, and we must satisfy ourselves that this element exists even if no party to the action raises a doubt regarding its presence." Bd. of Natural Res. v. Brown, 992 F.2d 937, 945 (9th Cir.1993).
 
 
 66
 Plaintiffs, in their response to the Service's Petition for Rehearing, argue that the mere fact that they submitted to the Service petitions for the species at issue suffices to establish standing. Although the petitions are not in the record, we can consider them because the petitions are published in the Federal Register, and federal courts are required to take judicial notice of the Federal Register. 44 U.S.C. § 1507.
 
 
 67
 We have held that "environmental groups have Article III standing if for no other reason than that they allege procedural violations in an agency process in which they participated." Portland Audubon Soc'y v. Endangered Species Comm., 984 F.2d 1534, 1537 (9th Cir.1993). However, Portland Audubon Society is materially distinguishable. There, the alleged procedural harm was to the substance of the process by which the intervenors' position was considered by the agency; the issue was whether the agency had failed "to adhere to the ban on ex parte communications in a proceeding to which the prohibition applies." Id. at 1537 n. 4. In that circumstance, "a participant in the agency's decisional processes is actually and particularly injured" because the participant's presentations to the agency are not fairly considered. Id. Here, by contrast, the alleged procedural harm was only the timing by which Plaintiffs succeeded in achieving their aims; indeed, their claim is not that things were done improperly, but that things were not done at all for a time. Thus, our earlier case simply does not apply.[1] In my view, we should follow the D.C. Circuit's holding in Fund Democracy v. SEC, 278 F.3d 21, 27 (D.C.Cir.2002):
 
 
 68
 The mere violation of a procedural requirement does not authorize all persons to sue to enforce the requirement. A party has standing to challenge an agency's failure to abide by a procedural requirement only if the government act performed without the procedure in question will cause a distinct risk to a particularized interest of the plaintiff.
 
 
 69
 (Citation omitted.)
 
 
 70
 As discussed above, because Plaintiffs submitted no affidavits or other evidence in support of their allegation of standing, they have failed to establish harm to particularized interests. As a result, Plaintiffs failed to establish standing.
 
 B. Mootness
 
 71
 Even if Plaintiffs established standing in the first instance, this action is moot. The majority opinion concludes that the case is not moot because Plaintiffs requested a declaratory judgment "[i]n effect ... that the Service's interpretation of 16 U.S.C. § 1533 is erroneous." Majority op. at 1173. The majority opinion finds that the parties have litigated the question of how to construe § 1533 several times and that, as a result, a substantial controversy remains between these parties as to the proper interpretation of § 1533. Id. at 1174-75. Neither the complaint nor the record supports that conclusion.
 
 
 72
 First, in their complaint, Plaintiffs did not seek a declaratory judgment to the effect that the Service's interpretation of the relevant deadlines in § 1533 is erroneous. Rather, Plaintiffs sought to declare that the Service's specific actions in response to the petitions for the species at issue did not comply with statutory requirements. Plaintiffs did allege that the Service regularly failed to comply with the statute. Significantly, however, Plaintiffs did not allege that the Service had promulgated an erroneous interpretation of the statute or that such an interpretation was the cause of the Service's failures to comply. It was only as a defense to Plaintiffs' claims that the Service suggested that § 1533 allowed it the discretion to delay indefinitely the 90-day determination. Thus, Plaintiffs' pleadings do not support the conclusion that there is a substantial, ongoing controversy between the parties as to the proper construction of § 1533.
 
 
 73
 Second, the record does not demonstrate that, apart from its response to the present litigation, the Service has routinely interpreted the statute's deadlines as discretionary or that the Service has been embroiled in an ongoing controversy with Plaintiffs over the proper interpretation of the statute. In fact, the record shows that the Service views the deadlines as mandatory but fails to meet them because Congress allocates insufficient resources to enable the Service to comply. With respect to the Spalding's Catchfly, the Mountain Yellow-Legged Frog, and the Great Basin Redband Trout, the Service conceded in its summary judgment papers that it "failed to fulfill [its] statutory mandate to make 12 month determinations." [Defs. Memo in Support of Summary Judgment at 30.] However, the Service requested that the court invoke its equitable powers to relieve it from the statutory deadlines. [Id.] Similarly, in an affidavit submitted by the Service, Gary Frazer, the Service's Assistant Director of Ecological Services who is responsible for administering the Endangered Species Act (ESA), acknowledged that, due to budget constraints, "the Service is still unable ... to complete all its petition findings on a timely basis.... Plainly stated, given the backlog caused by the recent history of listing moratoria and budget restrictions, the ESA imposes on the Service more listing duties than the Service currently is able to meet." Oral argument confirmed that the Service generally holds the view that it is not in compliance with the deadlines in § 1533, but that its noncompliance should be excused because of financial impossibility. Cf. Forest Guardians v. Babbitt, 174 F.3d 1178, 1186-88 (10th Cir.1999) (recognizing that the Secretary of the Interior conceded that related deadlines in § 1533 were mandatory, but argued that lack of resources excused noncompliance).
 
 
 74
 In short, the pleadings and the record do not establish a substantial, ongoing dispute between the parties over the proper interpretation § 1533. Instead, the Service's interpretation was a litigation position adopted in the context of the controversy surrounding the Service's failure to make listing determinations with respect to the specific species at issue in this action: the Spalding's Catchfly, the Mountain Yellow-Legged Frog, the Great Basin Redband Trout, and the Yellow-Billed Cuckoo. Because the Service has now made listing determinations with respect to each of those species, the legal correctness of the Service's defense for having failed to make those listings in a timely manner is no longer at issue. No additional remedies (such as damages) are possible on these pleadings. Accordingly, the whole case is now moot, and we must dismiss the appeal. Pub. Utils. Comm'n v. Fed. Energy Regulatory Comm'n, 100 F.3d 1451, 1458 (9th Cir.1996).
 
 
 75
 For the foregoing reasons, I respectfully dissent.
 
 
 
 Notes:
 
 
 [1]
 I also question the proposition that participation in an administrative process, without more, creates standing under Article III, because that proposition misapplies the Supreme Court's holding inLujan. See Gettman v. Drug Enforcement Admin., 290 F.3d 430, 433-34 (D.C.Cir.2002) (holding that the fact that the plaintiffs qualified as "interested parties" entitled by statute to petition an agency was not, standing alone, sufficient to establish the plaintiffs' Article III standing to seek judicial review of the agency's denial of their petition); Fund Democracy v. SEC, 278 F.3d 21, 27 (D.C.Cir.2002) (holding that "[p]articipation in agency proceedings is alone insufficient to satisfy judicial standing requirements").