**INSTITUTE FOR WILDLIFE PROTECTION; Steven G. Herman, Plaintiffs—Appellants,**

v.

**Gayle NORTON, in her official capacity as Secretary of the Department of the Interior; Steve Williams, in his official capacity as Director of the United States Fish and Wildlife Service, an agency of the Dept of the Interior, Defendants—Appellees,**

**State of Nevada, Division of Wildlife, Defendant–Intervenor—Appellee.**

No. 04–35104.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 7, 2005.

Decided Sept. 15, 2005.

Michael C. Subit, Esq., Frank Freed Subit & Thomas LLP, Seattle, WA, for Plaintiffs–Appellants.

M. Alice Thurston, Esq., Katherine W. Hazard, Esq., James A. Maysonett, Esq., U.S. Department of Justice, Environment & Natural Resources Division, Washington, DC, Brian C. Kipnis, Esq., USSE— Office of the U.S. Attorney, Seattle, WA, for Defendants–Appellees.

C. Wayne Howle, Esq., AGNV—Office of the Nevada Attorney General, Carson City, NV, for Defendant–Intervenor–Appellee.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

Before: O'SCANNLAIN, MCKEOWN, and BEA, Circuit Judges.

## MEMORANDUM *

Plaintiffs–Appellants the Institute for Wildlife Protection ("IWP") and Dr. Steven G. Herman appeal the district court's order granting summary judgment in favor of Defendants–Appellees Gale Norton, in her official capacity as Secretary of the Department of the Interior, and Steven Williams, in his official capacity as Director of the United State Fish and Wildlife Service ("FWS"), and also appeal the district court's order granting the Nevada Department of Wildlife's ("NDOW") motion to intervene below both permissively and as of right.[1] The gravamen of the IWP's complaint is that the Secretary failed to comply with certain procedural requirements of the Endangered Species Act ("ESA") and the Administrative Procedure Act ("APA"). We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm. Because the parties are familiar with the factual background and procedural history, we do not repeat them here except to the extent necessary to our disposition.

## STANDARD OF REVIEW

We review *de novo* the district court's order granting summary judgment, and may affirm on any ground supported by the record. *High Sierra Hikers Associa-*

1. Hereinafter, we do not distinguish between the IWP and Herman nor between the Secretary and the FWS.

*tion v. Blackwell,* 390 F.3d 630, 638 (9th Cir.2004).

## DISCUSSION

### I. First Claim for Relief: 90–Day Finding

■ "In reviewing agency action, the APA requires 'that due account shall be taken of the rule of prejudicial error.'" *City of Sausalito v. O'Neill,* 386 F.3d 1186, 1220 (9th Cir.2004) (quoting 5 U.S.C. § 706). Accordingly, "[w]here the agency's error consisted of a failure to comply with regulations in a timely fashion, we have required plaintiffs to identify the prejudice they have suffered," and, when they fail to do so, "'no [judicial] action is warranted.'" *Id.*[2] As stated in its First Amended and Supplemented Complaint, the IWP's first claim for relief alleges that the Secretary's delay in issuing the 90–day finding violated the ESA and the APA. First Am. and Supp. Compl. ¶¶ 4.1–4.9.

But the IWP has not made a showing of prejudice resulting from the Secretary's allegedly tardy 90–day finding. Even if the Secretary were to have made a positive 90–day finding within 90 days after the IWP filed its petition, the Secretary would have been under no obligation to act again until the deadline for the 12–month finding. 16 U.S.C. § 1533(b)(3)(A), (B); *accord Biodiversity Legal Foundation v. Badgley,* 309 F.3d 1166, 1170–71 (9th Cir. 2002). Here, the Secretary made formal findings as to the IWP's petition within 12 months of the petition being filed. 67 Fed.Reg. 78,811–15.[3] Thus, we conclude that no judicial action is warranted with respect to the IWP's first claim for relief.[4]

### II. Second Claim for Relief: Emergency Listing

#### A. December 26, 2002 Regulation

■ We agree with the district court that the IWP's second claim for relief did

---

**2.** Although the IWP brought its suit pursuant to both the ESA's citizen-suit provision and the APA, 5 U.S.C. § 706 of the APA controls the standard of review in a citizen-suit challenging an agency action under the ESA. *Village of False Pass v. Clark,* 733 F.2d 605, 609 (9th Cir.1984)("Because ESA contains no internal standard of review, section 706 of the Administrative Procedure Act, 5 U.S.C. § 706, governs review of the Secretary's actions.").

**3.** We also note that, on April 21, 2004, the Secretary issued a positive 90–day finding for the greater sage grouse (which includes the Mono basin area sage grouse). 69 Fed.Reg. 21,484. Then, on January 12, 2005, about one month before oral argument, the Secretary published her 12–month finding in which she concluded that listing of the greater sage grouse was not warranted. 70 Fed.Reg. 2,244.

**4.** We note that the question of prejudice is distinct from mootness. In *City of Sausalito,* we distinguished *Biodiversity Legal Foundation v. Badgley,* 309 F.3d 1166, 1170 (9th Cir.2002), and *Center for Biological Diversity v. Norton,* 254 F.3d 833 (9th Cir.2001), be-

cause in both, "the agency had not yet performed its obligations under the ESA when suit was filed" whereas "by contrast, when [the City of] Sausalito filed suit, the [National] Park Service had already satisfied its ESA obligations ... albeit belatedly...." *City of Sausalito,* 386 F.3d at 1220–21. Here, the IWP filed suit on July 3, 2002, Compl. at 1,12, and, thus, before the Secretary made her 90–day finding on December 26, 2002. 67 Fed. Reg. 78,811–15. However, on June 4, 2003, the district court dismissed the first claim for relief because the gravamen of that claim was that the Secretary *failed* to issue a 90–day finding but the December 26, 2002 finding constituted such a ruling, even if delayed, and thus mooted the claim. Order on Mot. to Dismiss at 4–5. The IWP did not and does not now appeal that ruling. Instead, on July 23, 2003, the IWP filed its First Amended and Supplemented Complaint, wherein it alleged that the Secretary's *delay* in issuing the 90–day ruling violated the ESA and the APA. First Am. and Supp. Compl. ¶¶ 4.1–4.9. Thus, although the original complaint was filed before the Secretary made her December 26, 2002 finding, the claim now on appeal was not alleged until well afterwards.

not give the Secretary "fair notice" that it challenged the Secretary's final decision denying emergency listing of the Mono Basin area sage grouse as embodied within the Secretary's December 26, 2002 regulation. *See Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Fed. R.Civ.P. 8(a). The IWP filed its original complaint nearly six months before the Secretary's December 26, 2002 regulation, and, thus, the second claim for relief as originally drafted could not have pertained to that regulation. After the December 26, 2002 regulation, the Secretary moved to dismiss the original complaint. The district court granted the motion in part, and, although the IWP thereafter amended its first claim for relief, it did not amend its second claim for relief.

The IWP responds that the First Amended and Supplemented Complaint included two new allegations specifically referring to the December 26, 2002 regulation, and that the second claim for relief incorporated these allegations. We do not find these allegations significant for three reasons.

*First,* the allegations merely recognized that the Secretary promulgated her December 26, 2002 regulation and, there, "reiterated [her] original denial of an emergency listing of the Mono sage grouse (tendered to Plaintiffs by letter), but did not make any further explanation of [her] decision." First Amend. and Suppl. Compl. ¶¶ 3.17–3.18. Thus, these allegations do not challenge the December 26,

2002 regulation itself, but rather note only that the December 26, 2002 regulation did not shed any new light on the Secretary's original determination.

*Second,* had these allegations been meant to challenge the December 26, 2002 regulation rather than the March 20, 2002 letter, the IWP should have incorporated them into a claim for relief distinct from the second claim for relief. *See Bautista v. Los Angeles County*, 216 F.3d 837, 840–841 (9th Cir.2000) ("[E]ach plaintiff's claim ... founded upon a separate transaction or occurrence ... is properly 'stated in a separate count ... [because] a separation facilitates the clear presentation of the matters set forth.'") (citing Fed.R.Civ.P. 10(b); *Moore's Federal Practice*, § 10.03[2][a] (3d ed.1997)).

*Third,* even if these allegations could have been interpreted differently, the IWP itself made clear that they should not.

Thus, we conclude that the second claim for relief as set forth in the First Amended and Supplemented Complaint did not pertain to the December 26, 2002 regulation.

## B. March 20, 2002 Letter

■ Turning then to the Secretary's March 20, 2002 letter, we assume without deciding that the Secretary's decision whether to issue an emergency listing pursuant to 16 U.S.C. § 1533(b)(7) and/or the basis on which she makes that decision is nondiscretionary such that the ESA's citizen-suit provision provides a claim for relief against the Secretary.[5] Even so, to

---

**5.** We note that regardless whether the ESA's citizen-suit provision provides a claim for relief, the APA does not independently do so. On the one hand, if the ESA's citizen-suit provision does provide a claim for relief, the independent provision of a claim for relief by the APA is inapplicable because it provides a claim for relief for "final agency action for which there is no other adequate remedy in a court...." 5 U.S.C. § 704; *see also Norton*

*v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 124 S.Ct. 2373, 2378, 159 L.Ed.2d 137 (2004) ("Where no other statute provides a private right of action, the 'agency action' complained of must be 'final agency action.'"). On the other hand, if the ESA's citizen-suit provision does not provide a claim for relief, it is because the decision whether to issue emergency regulations and/or the basis for doing so is discretionary, and the APA

the extent that the ESA's citizen-suit provision provides a claim for relief at all, it is only "where there is alleged a failure of the Secretary to perform any act or duty...." 16 U.S.C. § 1540(g)(1)(C). We cannot say that the Secretary's March 20, 2002 letter constitutes a failure to perform an "act or duty." *See id.* Rather, the March 20, 2002 letter says nothing more about the emergency listing than that the Secretary's "initial review" of the petition suggested that the circumstances did not justify an emergency listing, and, thus, is nothing more than a gratuitous status update on a ongoing and incomplete process, which, at the time, did not compel conduct by anyone.[6] The ESA sets forth certain requirements regarding the type of information on which the Secretary must rely in deciding whether to issue emergency listings and what situations warrant emergency listings, *see* 16 U.S.C. §§ 1533(b)(1), 1533(b)(7), but these requirements do not apply equally to the Secretary's initial and nonbinding review such that the Secretary's interim views there constitute a failure to perform an "act or duty." *Cf. Bennett,* 520 U.S. at 172–74, 117 S.Ct. 1154 (interpreting "violation" of the ESA as used in 16 U.S.C. § 1540(g)(1)(A) so as to avoid "effect[ing] a wholesale abrogation of the APA's 'final agency action' requirement" such that "[a]ny procedural default, even one that had not yet resulted in a final disposition of the matter at issue, would form the basis for a lawsuit," and noting that "[w]e are loath to produce such

an extraordinary regime without the clearest of statutory direction").[7]

**AFFIRMED.**

---

does not independently provide a claim for relief when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2); *accord Bennett v. Spear,* 520 U.S. 154, 175, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).

6. The final regulation, by contrast, states: "A review of the best available scientific and commercial data does not lead us to conclude that the Mono Basin area sage grouse is threatened with extinction, nor are the threats

of such a magnitude to warrant emergency listing." 67 Fed.Reg. 78,814.

7. Because we so hold, we need not reach whether the district court erred in granting the NDOW intervention either permissively or as a matter of right.

