Judith Katherine EXNER, Plaintiff,

v.

FEDERAL BUREAU OF INVESTIGA-
TION, Clarence M. Kelley, Director,
Federal Bureau of Investigation, United
States Department of Justice, and Ed-
ward H. Levi, Attorney General of the
United States, Defendants.

Civ. No. 76–89–S.

United States District Court,
S. D. California.

Jan. 27, 1978.

See also, 9 Cir., 542 F.2d 1121.

Richard C. Leonard, Beverly Hills, Cal., for plaintiff.

Michael H. Walsh, U. S. Atty., Charles H. Dick, Jr., Asst. U. S. Atty., San Diego, Cal., for defendants.

## MEMORANDUM OPINION

EDWARD J. SCHWARTZ, Chief Judge.

Plaintiff, Judith Katherine Exner, has moved for an award of attorney fees and litigation costs pursuant to the provisions of the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(E). Plaintiff's action was brought under the Freedom of Information Act, 5 U.S.C. § 552, and the Privacy Act of 1974, 5 U.S.C. § 552a, demanding certain records pertaining to her in the possession of the Federal Bureau of Investigation (FBI). For the reasons discussed in this opinion, the court concludes that plaintiff has "substantially prevailed" in this litigation, and that she is entitled to an award of attorney fees and litigation costs.

## FACTUAL BACKGROUND

On December 24, 1975, at the request of plaintiff, a letter was written to the FBI requesting access to any and all records relating to her contained in the files of the FBI. Plaintiff received no response to her request within ten working days. Deeming this failure to respond a denial of her request[1], plaintiff, by her attorney, wrote a letter to the Department of Justice dated January 11, 1976. Plaintiff indicated in this letter that she deemed her previous request denied and appealed that denial directly to the Department of Justice.

By letter dated January 15, 1976, the Director of the FBI responded to plaintiff's request for information. After acknowledging receipt of plaintiff's Freedom of Information-Privacy Acts request, the FBI letter indicated that, because of the heavy backlog of requests for information, more time would be necessary to process plaintiff's request.

During the next two weeks, plaintiff's attorney attempted, by letter and telephone call, to convince the FBI that plaintiff's request should be given priority handling. Because of the unique circumstances of her case, plaintiff believed her request was entitled to expedited treatment and processing by the government. In a letter dated February 5, 1976, the Chief of the Freedom of Information and Privacy Unit in the Office of the Attorney General denied plaintiff's request for preferential treatment. Plaintiff was advised that she could treat the February 5 letter as a denial of her administrative appeal by the Deputy Attorney General, entitling her to seek relief in the courts.

On February 6, 1976, plaintiff filed an action in this court to compel immediate disclosure of records pertaining to her in the possession of the FBI. Pursuant to

---

1. 5 U.S.C. § 552(a)(6)(A) requires an agency, upon any request for records made under the Freedom of Information Act, to determine within ten working days after the receipt of such a request whether to comply with it. The agency must immediately notify the person making the request whether the agency will comply. Under 5 U.S.C. § 552(a)(6)(C), the person is deemed to have exhausted his administrative remedies with respect to the request if the agency fails to comply with the ten day limit. It was under the authority of this statutory scheme that plaintiff deemed the FBI's failure to respond within ten working days a denial of her request.

orders of this court entered April 9, 1976, and April 20, 1976, defendants were ordered to make a report and to file an affidavit or affidavits containing the detailed information contemplated by *Vaughn v. Rosen*, 157 U.S.App.D.C. 340, 484 F.2d 820 (1973). The court also denied the government's motion to stay further proceedings pending completion of defendants' review of the documents requested.

Immediately thereafter, the defendants appealed this court's orders relating to the stay and to the requirement that a *Vaughn v. Rosen* affidavit be filed. On May 26, 1976, the Court of Appeals for the Ninth Circuit denied the government's motion for a stay of this court's orders pending appeal. The effect of the Ninth Circuit's denial was to force the government to produce a *Vaughn v. Rosen* affidavit, and any documents which were not in dispute, while the appeal was pending. The Ninth Circuit issued its decision on the substantive merits of the government's appeal on September 30, 1976. Concluding that this court did not abuse its discretion in declining to grant the defendants further time, the Court of Appeals held that "the filing of suit by a person demanding information can (but does not necessarily) move such petition 'up the line,' *i. e.*, create a preference, particularly if a Federal Court orders it." *Exner v. Federal Bureau of Investigation*, 542 F.2d 1121, 1123 (9th Cir. 1976).

In the wake of this court's April, 1976, orders, and the Ninth Circuit's denial of a stay pending appeal, the defendants on June 24, 1976, released to plaintiff approximately 200 pages from 85 documents. On four additional occasions through and including August 10, 1977, more documents were released. Of a total of 92 documents identified by defendants in response to plaintiff's request, defendants released to her 86 documents in whole or in part by August 10, 1977. As to the documents and portions of documents not released, the government asserted exemptions pursuant to the Privacy Act and the Freedom of Information Act. After examining these documents in camera, the court concluded that they were properly withheld from disclosure. The government's motion for summary judgment was granted and the action was dismissed.

## PLAINTIFF'S MOTION FOR ATTORNEY FEES

■ Against this factual background, plaintiff has moved for an award of attorney fees and litigation costs. As a general rule of law, it is well established that attorney fees are not ordinarily recoverable by the prevailing party in federal litigation in the absence of statutory authorization. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Similarly, Congress has provided in 28 U.S.C. § 2412 that attorney fees may not be assessed against the United States unless they are specifically authorized by statute. In this case, the authority for an award of fees and costs derives from 5 U.S.C. § 552(a)(4)(E), which provides as follows:

> "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has *substantially prevailed*." [emphasis added]

The issue the court must resolve is whether the plaintiff has "substantially prevailed" as that term is used in the above statutory provision.

### Policy and legislative history of § 552(a)(4)(E)

■ To resolve this issue, some attention must be given to the underlying policy and legislative history of § 552(a)(4)(E). The Freedom of Information Act was enacted to insure that an unnecessary web of secrecy would not be drawn around information which the public is entitled to know. As the Court of Appeals for the District of Columbia Circuit recently noted, FOIA's basic policy is "to encourage the maximum feasible public access to government information." *Nationwide Building Maintenance, Inc. v. Sampson*, 559 F.2d 704, 715 (D.C.Cir.1977). The attorney fees provision of the statute has as its fundamental purpose the facilitation of citizen access to the courts to vindicate the public's statutory

rights. This court finds itself persuaded by the view of the D.C. Circuit that "a grudging application" of the attorney fees provision "would be clearly contrary to congressional intent." *Id.*

■ This court also is cognizant of the fact that without some provision for attorney fees, many citizens and organizations would be unable to prosecute actions under the Freedom of Information Act. As a practical matter, costs and fees present a virtually insurmountable barrier which bars the average person from forcing governmental compliance with the law. *See* S.Rep.No.93–854, 93d Cong., 2d Sess. 17 (1974); *Cuneo v. Rumsfeld*, 553 F.2d 1360, 1363–64 (D.C.Cir.1977). Congress realized that an allowance of fees and costs was necessary in FOIA actions to encourage full public disclosure of government information. S.Rep.No.93–854, *supra*, at 18. In § 552(a)(4)(E), Congress has made a clear determination that an award of attorney fees is appropriate and desirable whenever a complainant prevails in FOIA litigation. *Id.; Cuneo v. Rumsfeld, supra*, 553 F.2d at 1364.

Legislative history provides additional insight into the purpose and function of the Freedom of Information Act's proviso for attorney fees. As originally proposed by the House of Representatives, the provision which was to become § 552(a)(4)(E) permitted recovery of attorney fees and litigation costs in any FOIA case in which the United States "has not prevailed". H.R. 12471, 93d Cong., 2d Sess. (1974). The Senate's somewhat different version proposed an award of attorney fees in any case where the complainant "substantially prevailed." S. 2543, 93d Cong., 2d Sess. (1974). The Senate bill outlined four criteria to be considered by the court in exercising its discretion to award attorney fees: (1) the benefit to the public, if any, deriving from the case; (2) the commercial benefit to the complainant; (3) the nature of the complainant's interest in the records sought; and (4) whether the government's withholding of the records sought had a reasonable basis in law. The Senate report accompanying the bill included the following explanation:

"Generally, if a complainant has been successful in proving that a government official has wrongfully withheld information, he has acted as a private attorney general in vindicating an important public policy. In such cases it would seem tantamount to a penalty to require the wronged citizen to pay his attorneys' fees to make the government comply with the law."

S.Rep.No.93–854, *supra*, at 19.

■ The compromise bill which emerged from conference retained the "substantially prevailed" language of the Senate bill but eliminated the four criteria set forth above. Although the conferees did not wish to preclude the courts from taking such criteria into consideration, they believed the courts should not be limited to these criteria in exercising their discretion. H.R. Rep.No. 93–1380, 93d Cong., 2d Sess. 9 (1974). Consequently, the court may take into account whatever factors it deems relevant in determining whether an award of attorney fees is appropriate.

*Analysis of legal issues*

This particular case presents the court with a factual situation which, to the court's knowledge, has not been faced by any other federal court. Unlike so many of the reported decisions construing § 552(a)(4)(E), this is not a case where the government voluntarily turned over everything the plaintiff sought after the lawsuit was initiated but before a final judgment. *See, e. g., Vermont Low Income Advocacy Council, Inc. v. Usery*, 546 F.2d 509 (2d Cir. 1976); *Cuneo v. Rumsfeld, supra; Goldstein v. Levi*, 415 F.Supp. 303 (D.D.C.1976). Neither side in this case was 100% successful or unsuccessful. Although the limited number of previous decisions construing § 552(a)(4)(E) provide some general guidance, the court deals here with a matter governed primarily by judicial discretion. Because of the unusual nature of this case, the court has reviewed plaintiff's request for attorney fees with a great deal of care and consideration.

■ In determining whether a plaintiff has substantially prevailed in FOIA litigation, the court requires two threshold conditions to be satisfied. First, the plaintiff must show that prosecution of the action could reasonably have been regarded as necessary. Second, the action must be shown to have had substantial causative effect on the delivery of the information. *Vermont Low Income Advocacy Council, Inc. v. Usery, supra,* 546 F.2d at 513. Both conditions have been fulfilled here.

With regard to the first condition, plaintiff had a compelling need to bring this lawsuit. She was not simply an ordinary citizen who was curious as to what information the government might have compiled on her. During her 1975 testimony before a U.S. Senate select committee on intelligence activities, she became aware that the FBI had conducted investigations and maintained files relating to her since 1960. She believed that information pertaining to her published by the Senate committee in its official report was inaccurate. Although she herself was enjoined to secrecy by the Senate committee, and had maintained strict personal silence as to the subject matter for many years, it soon appeared that information emanating from her FBI files, some of it inaccurate, had been leaked to the press by the Senate select committee staff. Perhaps most important, she felt the leaked information regarding her alleged relationships with organized crime figures, two of whom had been murdered, exposed her to grave personal danger. Because of all these concerns, it was incumbent that plaintiff have an opportunity not only to review and correct the information in the FBI's files, but to do so as soon as possible. Given the government's unwillingness to give her request any sort of preferential treatment, the only way plaintiff could accomplish her goal was to bring this action.

As far as causative effect is concerned, the court has no doubt that this action was directly responsible for delivery of the documents plaintiff received. The government contends that plaintiff's suit did not facilitate the production of any information that she otherwise would not have received in due time. This may or may not be true;

there is no proof as to what, if any, information eventually would have been produced in the absence of this action. Even assuming the government's contention is correct, the purpose of the lawsuit was to compel *immediate* production of documents in the government's possession. The government seems to suggest in its argument that an action affecting only the timing of production does not meet the test for an award of attorney fees. Section 552(a)(4)(E) contains no such limitation, nor does the legislative history suggest Congress desired one. The key is whether there is a substantial causative relationship between the lawsuit and the delivery of information. *When* the information is delivered may be as important as *what* information is delivered.

The court's conclusion that this action substantially caused the delivery of information is further supported by the fact that this litigation was tedious and hard fought at every stage. Throughout the proceedings, the government presented a very formidable opposition. Virtually everything plaintiff attempted to do was vigorously opposed. Were it not for the dogged determination of plaintiff and her attorney, it is unlikely the case would ever have produced the favorable results it achieved.

■ There are other factors which lead the court to conclude that plaintiff substantially prevailed in this case. Plaintiff convinced this court and the Ninth Circuit Court of Appeals that she was entitled to have her request for information moved "up the line". In so doing, she established the principle that there are some exceptional cases where the government must specially process requests for information on a priority basis. In effect, plaintiff acted as a private attorney general in vindicating an important public policy. This is precisely the type of situation Congress indicated would be proper for an award of attorney fees. S.Rep.No.93–854, *supra,* at 19.

In addition, the court has evaluated the nature of plaintiff's interest in the records she sought. Plaintiff had a legitimate personal interest in the documents involved in this case. There was evidence that (1) the

FBI had compiled a substantial amount of information pertaining to plaintiff; (2) at least some of the information may have been inaccurate; (3) the information was being made a matter of public record without plaintiff's being given an opportunity to review it beforehand; and (4) plaintiff's personal safety might be endangered. Throughout the case, the government has urged that plaintiff wanted the information primarily for use in connection with a book she was preparing. While this may have been one reason for pursuing the action, the court believes plaintiff's primary motivation was personal rather than commercial. The matter is somewhat academic because plaintiff's book was published prior to the release of any documents in this litigation.

Finally, the court is impressed by the sum total of what plaintiff accomplished in this litigation. It is true that plaintiff was not completely successful. The statute, however, does not require complete success. It requires only that the complainant substantially prevail. Plaintiff here was significantly more successful than the government. Although she did not receive all the documents she sought, she did get a very substantial portion of what she requested. More important, she completely succeeded in her effort to force the government to give her information request priority treatment. On balance, the court considers plaintiff to have substantially prevailed in this litigation. Therefore, she is entitled to an award of attorney fees and litigation costs.

### Amount of award

■ It remains for the court to determine the amount of attorney fees to be awarded. The following criteria should be considered in determining the award: time spent by attorney; novelty and complexity of the issues presented; level of skill required; customary fee charged by attorney or firm; experience, reputation, and ability of attorney; and awards in similar cases. Goldstein v. Levi, supra, 415 F.Supp. at 305–06.

Plaintiff's counsel has submitted an affidavit detailing the services rendered in this case, time spent, and his general background and experience. Counsel states in his affidavit that he has spent approximately one hundred fifty hours in connection with this litigation, including six appearances before this court, argument before the Ninth Circuit Court of Appeals, and preparation of appellate court briefs and numerous motions and pleadings. Counsel indicates that he has a substantial amount of experience in commercial litigation matters, more than fifty percent of which has been in federal court. The customary hourly rate charged by counsel is stated to range from $75 to $85 per hour. In this matter, counsel has billed plaintiff at the rate of $75 per hour, which this court finds to be a reasonable hourly compensation for plaintiff's attorney herein.

As the court indicated previously, this litigation was tedious and hard fought at every stage. Many of the issues were complex, particularly those concerning the plaintiff's right to have her document request accorded priority consideration. The action, which was actively litigated before this court for a period of nineteen months, was fairly lengthy. Finally, the quality of counsel's work throughout the case was consistently excellent.

Counsel for plaintiff indicated on the record that of the total of one hundred fifty hours expended by him in this matter, approximately twenty-five hours were devoted to resisting defendants' motion for summary judgment which was granted by the court. It is the finding of the court that by the time the motion for summary judgment was filed, plaintiff had received all the questioned materials to which she was entitled and that plaintiff's unsuccessful resistance of the motion produced no substantial benefit for plaintiff. Accordingly, in its allowance of fees the court will take into account only one hundred twenty-five hours of attorney time, and will order an award of $9,375.00 as and for plaintiff's attorney fees herein.

■ Counsel for plaintiff also has submitted an itemized list of costs and expenses. 5 U.S.C. § 552(a)(4)(E) permits an award of litigation costs in addition to attorney fees. The costs incurred by plaintiff

are reasonable, and the court will order an award of $700.21 for expenses and costs.