Sally HART and Center for Medicare
Advocacy, Inc., Plaintiffs,

v.

UNITED STATES DEPARTMENT
OF HEALTH AND HUMAN
SERVICES, Defendant.

No. CR 09–076–TUC–CKJ.

United States District Court,
D. Arizona.

Dec. 18, 2009.

Gill Deford, CTR for Medicare Advocacy Inc., Willimantic, CT, Sally Hart, Tucson, AZ, for Plaintiff.

J. Cole Hernandez, U.S. Attorney's Office, Tucson, AZ, for Defendant.

## ORDER

CINDY K. JORGENSON, District Judge.

On July 31, 2009, Magistrate Judge Jennifer C. Guerin issued a Report and Recommendation [Doc. # 30] in which she recommended denying Plaintiff's Motion for Summary Judgment [Doc. # 14], granting Defendant's Cross–Motion for Summary Judgment [Doc. # 24], and dismissing with prejudice the claims alleged against Defendant. The magistrate judge advised the parties that they had ten days to serve and file any written objections to the Report and Recommendation. Plaintiffs filed an objection and requested oral argument. The Defendant filed a response. The Court declines to schedule this matter for oral argument and adopts the recommendation of the magistrate judge.

*Report and Recommendation*

On August 12, 2008, Plaintiffs submitted a request for information under the Freedom of Information Act (FOIA) to the Centers for Medicare and Medicaid Services (CMS). Defendant's response to the request was delayed because the agent assigned to Plaintiffs' FOIA request was out of the office for personal health issues and the care of a dependent family member. Defendant was unable to reassign the request to another staff member due to the limited number of FOIA personnel in the office. On October 30, 2008, Plaintiffs wrote to CMS, appealing the Defendant's failure to acknowledge the FOIA claim. CMS wrote to Plaintiffs to acknowledge the receipt of the FOIA request on February 17, 2009.

Prior to receiving Defendant's acknowledgment of the FOIA request, Plaintiffs filed a lawsuit on February 6, 2009. Plaintiffs' notice of the lawsuit arrived at Defendant's office in Washington, D.C. on February 17, 2009, and CMS received actual notice on February 18, 2009 at its office in Baltimore, M.D. Defendant has provided all the documents requested.

The magistrate judge found that Plaintiffs' claims were moot because the Defendant has already provided the documents requested under the FOIA. The magistrate judge further found that Plaintiffs were not entitled to attorney fees because (1) Plaintiffs had not obtained a judicial order granting relief and (2) Defendant did not voluntarily change its position as a result of Plaintiffs' complaint.

*Objections to the Report and Recommendation*

Plaintiffs objected to the Report and Recommendation and assert that Plaintiffs' action is not moot because there is plausible evidence that Defendant has a pattern and practice of failing to respond timely to FOIA requests and that Plaintiffs meet

the statutory test for an award of attorney fees.

*Discussion*

### 1. Plaintiffs' action is moot because the agency has discharged its duty under the FOIA.

 The FOIA requires a response within 20 days of a request. 5 U.S.C. § 552(a)(6)(A)(i). It is undisputed that Defendant failed to respond to Plaintiffs' request within 20 days. However, an action to compel the production of documents under the FOIA is mooted, and appropriately dismissed, when the agency in control of the requested documents delivers them to the plaintiff. *See Beech v. C.I.R.,* 190 F.Supp.2d 1183 (D.Ariz.2001), *aff'd in Beech v. C.I.R.,* 37 Fed.Appx. 324 (9th Cir.2002). It is undisputed that Defendant has provided Plaintiffs with all the requested documents under the FOIA. The magistrate judge found that because Defendant has discharged its duty under the FOIA, Plaintiffs' action is moot.

 Plaintiffs, however, claim that their action is not moot because there is plausible evidence that Defendant has a pattern and practice of failing to respond timely to FOIA requests. The magistrate judge agreed that an agency's pattern and practice may be held to violate the FOIA when it fails to exercise "due diligence" under § 552(a)(6)(C). *Mayock v. Nelson,* 938 F.2d 1006, 1007 (9th Cir.1991). Plaintiffs, however, have not presented sufficient evidence of a pattern of delayed responses.

CMS receives more requests than any other component of the Department of Health and Human Services (DHHS). CMS received 37,587 new FOIA requests in fiscal year 2007 and processed 36,822. CMS then received 43,792 new requests in fiscal year 2008 (the year of Plaintiffs' FOIA request) and processed 41,260 requests. Additionally, CMS uses a "first-in, first-out" approach to handle FOIA re-

quests. The Court agrees with the magistrate judge that Defendant's "first in, first out" practice does not amount to a factual showing that Defendant continually violates the FOIA requirements. Further, as stated by the magistrate judge, "a 'first-in, first-out' approach to handling FOIA requests was approved by the Ninth Circuit in *Exner v. Federal Bureau of Investigation,* 542 F.2d 1121, 1123 (9th Cir.1976)." Report and Recommendation, p. 855, n. 4.

The Court also considers the facts set forth in *Center for Medicare Advocacy, Inc. v. U.S. Dept. of Health and Human Services,* 577 F.Supp.2d 221, 242 (D.D.C. 2008), and the data submitted by the parties (e.g., 2006 improvement plan; DHHS Fiscal Year 2008 Freedom of Information Annual Report). Although Plaintiffs argue that the data shows that the backlog has increased, the data also establishes that number of FOIA requests has also increased. Most significantly, the data also indicates that CMS increased the number of responses processed. The Court agrees with the magistrate judge that a pattern and practice of delayed responses warranting a determination of a FOIA violation has not been established.

This circuit has recognized that due diligence under the FOIA may require an agency with a "first-in, first-out" practice to give priority to requesters with an exceptional need. *Mayock,* 938 F.2d at 1008. In *Mayock v. Nelson,* the Ninth Circuit remanded the case to the district court to determine whether the Plaintiff had shown an exceptional need. *Id.* There, the plaintiff was an immigration attorney whose clients were often deported before he received FOIA documents necessary for immigration proceedings. *Id.* at 1007. Plaintiffs in this case have not asserted that they are entitled to priority in Defendant's "first-in, first-out" system due to some exceptional need, such as the immi-

nent harm faced by deportees in *Mayock*. Because Plaintiffs do not claim or show an exceptional need, Defendant has not violated the FOIA's due diligence standard by failing to afford Plaintiffs priority in the "first-in, first-out" system.

**2. Plaintiffs are not eligible for attorney fees because there is insufficient evidence to support a claim that Defendant materially changed its position as a result of pending litigation.**

█ In order to obtain an award of attorney fees under the FOIA, the plaintiff must demonstrate both eligibility and entitlement to the award. *Long v. I.R.S.*, 932 F.2d 1309, 1313 (9th Cir.1991). Because this Court finds that Plaintiffs are not eligible for an award of attorney fees, it need not address the issue of entitlement.

Plaintiffs are eligible for attorney fees when they substantially prevail by obtaining relief through either (1) a judicial order, enforceable written agreement, or consent decree; or (2) "a voluntary or unilateral change in position by the agency." 5 U.S.C. § 552(a)(4)(E). As Plaintiffs have not received a judicial order, enforceable written agreement, or consent decree, they are only entitled to attorney fees if the agency made a voluntary or unilateral change in its position as a result of pending litigation. Plaintiffs claim that, because the DHHS received notice of the suit before it acknowledged Plaintiff's FOIA request, the voluntary or unilateral change in position requirement is met. Plaintiffs object to the findings in the Report and Recommendation because it would create a high burden of proving a

defendant's actual motive for supplying documents. This Court finds these arguments unpersuasive and adopts the holding in the Report and Recommendation.

The OPEN Government Act of 2007 made several amendments to the Freedom of Information Act. One of these changes made plaintiffs eligible for attorney fees if the agency makes a voluntary or unilateral change in position. 5 U.S.C. § 552(a)(4)(E). Prior to the passage of this amendment, the U.S. Supreme Court rejected this "catalyst theory" in *Buckhannon Board & Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 605, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001).[1] Under the holding in *Buckhannon*, parties substantially prevailed only if they received a favorable judgment on the merits or a court-ordered consent decree. *Id.* at 604, 121 S.Ct. 1835. As long as agencies changed position before a court order was entered, they were not required to pay attorney fees.

Prior to *Buckhannon*, this circuit addressed the catalyst theory in *Church of Scientology of Cal. v. U.S. Postal Service*, 700 F.2d 486, 489 (9th Cir.1983). Because the OPEN Government Act of 2007 revived the catalyst theory, the analysis in *Church of Scientology* is instructive in the present case. There, the Church of Scientology of California (the Church) filed a FOIA request with the United States Postal Service (USPS) for information relating to the activities and operations of the Church and its founder. *Id.* at 488. The USPS produced certain documents but denied others, claiming they were exempt from disclosure. *Id.* The Church

---

**1.** One of the reasons for passing the OPEN Government Act of 2007 was to allow a plaintiff to be eligible for attorney fees when "he or she files a lawsuit to obtain records from the Government and the Government releases those records before the court orders them to do so." 153 Cong. Rec. S15704, 2007 WL 4364208, December 14, 2007. Thus, a plain-

tiff may now be eligible for attorney fees upon a showing that the lawsuit was reasonably necessary and that the litigation substantially caused the release of the requested records. *Judicial Watch, Inc. v. Bureau of Land Mgmt.*, 562 F.Supp.2d 159, 172 (D.D.C.2008). This is what is known as the "catalyst theory."

filed suit to compel disclosure of the withheld documents and, after several appeals, the district court held that the undisclosed material was properly withheld. *Id.* at 489. The district court also denied the Church's request for attorney fees. *Id.* In holding that the case should be remanded to the district court, the Ninth Circuit reasoned that there was a factual dispute as to whether the documents had been released as a result of the litigation. *Id.* at 490. It is the district court's responsibility to determine whether "a causal nexus exists between the action and the surrender of information." *Id.* at 489.

■ A plaintiff may be eligible for an award of attorney fees upon a showing "that: (1) the filing of the action could reasonably have been regarded as *necessary* to obtain the information; and (2) the filing of the action had a *substantial causative* effect on the delivery of the information." *Id.* A suit may be considered *reasonably necessary* where the plaintiff has a compelling need to bring the lawsuit. *Id.* at 490. In *Exner v. Federal Bureau of Investigation,* the Federal Bureau of Investigation (FBI) had failed to turn over information about the plaintiff's relationship with organized crime figures. 443 F.Supp. 1349, 1353 (S.D.Cal.1978). The district court found that this information, which was leaked, exposed the plaintiff to serious danger, and that the lawsuit was necessary to obtain the information as quickly as possible. *Id.* Also, the court found that the action had a substantial causative effect on the release of the requested documents because the suit resulted in the immediate production of the documents. *Id.*

■ Conversely, the Eight Circuit upheld a denial of attorney fees in *Ginter v. I.R.S.* because the lawsuit was not reason-ably necessary to the production of documents, nor did it have a substantial causative effect on their release. 648 F.2d 469, 471 (8th Cir.1981); *see also Church of Scientology,* 700 F.2d at 491. There, the IRS was unable to locate requested information and was in the process of conducting a special search when the plaintiff filed suit. *Id.* The IRS found and released some of the documents after the plaintiff filed suit, but the court held that this alone was not enough to infer that the suit had a substantial causative effect on the production of the requested material. *Id.* A lawsuit does not have a substantial causative effect on the production of material when "an unavoidable delay accompanied by due diligence in the administrative processes, rather than the threat of an adverse court order, was the actual reason for the agency's failure to respond to a request." *Church of Scientology,* 700 F.2d at 491 (citing *Cox v. U.S. Dept. of Justice,* 601 F.2d 1, 6 (D.C.Cir.1979)).

■ The present case is more like *Ginter* than *Exner.* Here, the FOIA office filed an untimely response to Plaintiffs' request due to an administrative delay rather than in response to pending litigation. Due to personal health care issues and the need to care for a dependent family member, the FOIA specialist assigned to Plaintiffs' request was out of the office for the latter part of 2008. This caused an unavoidable administrative delay. Additionally, Defendant sent a response to Plaintiffs' request on February 17, 2009, one day before the office received actual notice of this lawsuit. While Defendant was served with notice in its Washington, D.C. office on February 17, it is undisputed that the FOIA office responsible for the claim did not have notice of the suit before sending the response.[2] Be-

---

2. The CMS FOIA Group in the Baltimore Central Office did not become aware of the lawsuit until February 18, 2009. *See* Defendant's Separate Statement of Facts, Ex. 1 ¶ 6. Further, the office did not know of the litiga-

cause the response was sent before the office had actual notice of the lawsuit, this action cannot be considered to have had a *substantial causative effect* on the production of material. The delay in the response to Plaintiffs' claim was the result of an administrative delay and Plaintiffs have failed to show that their lawsuit had a substantial causative effect on the production of the material.

Accordingly, IT IS ORDERED:

1. The Report and Recommendation [Doc. # 30] is ADOPTED.

2. Plaintiffs' Motion for Summary Judgment [Doc. # 14] is DENIED.

3. Defendant's Cross–Motion for Summary Judgment [Doc. # 24] is GRANTED.

4. The claims against Defendant are DISMISSED WITH PREJUDICE.

5. The Clerk of the Court shall enter judgment and shall then close its file in this matter.

## REPORT & RECOMMENDATION

JENNIFER C. GUERIN, United States Magistrate Judge.

Pending before the Court is a Motion for Summary Judgment filed by Plaintiffs Sally Hart and Center for Medicare Advocacy, Inc. on April 2, 2009. (Doc. No. 14.) Plaintiffs' action, brought under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeks to compel the Department of Health and Human Services ("DHHS")

to provide government documents requested by Plaintiffs on August 12, 2008. Plaintiffs contend that, based on the undisputed facts before the Court, they are entitled to judgment as a matter of law.

Defendant United States Department of Health and Human Services filed a Response and Cross–Motion for Summary Judgment on June 4, 2009. (Doc. No. 24.) Defendant contends that all requested documents have been provided to Plaintiffs and that Defendant is entitled to judgment as a matter of law.

Plaintiffs responded to Defendant's cross-motion and replied to Defendant's response on June 23, 2009. (Doc. No. 27.) Defendant replied to Plaintiffs' response on July 13, 2009. (Doc. No. 28.)

Pursuant to the Rules of Practice in this Court, the matter was assigned to Magistrate Judge Guerin for a Report and Recommendation. (Doc. No. 29.) The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order denying Plaintiffs' Motion for Summary Judgment and granting Defendant's Cross–Motion for Summary Judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On August 12, 2008, Plaintiffs wrote to the Freedom of Information Group within Defendant's division, the Centers for Medicare & Medicaid Services ("CMS"), requesting copies of documents and information pursuant to FOIA. (PSOF 1, DRSOF 1.)[1] The request sought informa-

tion when the request was referred for searches on February 17, 2009. *Id.* Additionally, Plaintiffs claim that Defendant was served with notice in Arizona eight days before the response was sent. However, summons and complaints against Defendant are required to be sent to the General Counsel, Department of Health and Human Services, 200 Independence Avenue, S.W., Washington, D.C. 20201. 45 C.F.R. § 4.1. Service did not arrive at this location under February 17, 2009.

1. References to the parties' Statements of Fact are abbreviated herein as follows: Plaintiffs' Statement of Facts (Doc. No. 18) is abbreviated as "PSOF"; Defendant's Response to Plaintiff's Statement of Facts (Doc. No. 25, pg. 1) is abbreviated as "DRSOF"; Defendant's Statement of Facts (Doc. No. 25, pg. 2.) is abbreviated as "DSOF"; and Plaintiff's Response to Defendant's Statement of Facts (Doc. No. 26) is abbreviated as "PRSOF".

tion regarding numbers of attorneys against whom CMS or its agents took action to recover conditional payments under the Medicare Secondary Payer Program. (DSOF 1; PRSOF 1.) According to Plaintiff Sally Hart, the request was filed in an attempt to gather information for an article that Ms. Hart is authoring regarding popular misconceptions concerning the authority of the Medicare agency in collecting Medicare Secondary Payer claims, particularly the ongoing description of Medicare's unperfected claims as "liens" which impose particular obligations on personal injury attorneys. (Doc. No. 27, Ex. 1.) Neither of the Plaintiffs will receive any remuneration for the article by Ms. Hart. (*Id.*)

The CMS FOIA Group in the Baltimore Central Office ("CMS FOIA Group") has a staff of approximately 15 people, ten of whom are dedicated FOIA analysts. These analysts are responsible for processing requests that seek categories of records that have not been designated for direct release by CMS program offices, including CMS regional offices and Medicare contractors, in accordance with this agency's FMS guidelines. (DSOF 2; PRSOF 2.) Plaintiffs' FOIA request was assigned to a FOIA analyst because it sought documents not within the direct release category. (DSOF 3; PRSOF 3.)

Due to personal health issues and the care of a dependent family member, the FOIA specialist assigned to Plaintiffs' request was out of the office during the latter part of 2008 and the early part of 2009. (DSOF 5; PRSOF 5.) Because of the limited number of FOIA personnel in the FOIA Group, it was not possible to reassign the specialist's FOIA requests to another staff member. (*Id.*) Consequently, Defendant's response to the request was delayed. (*Id.*)

On October 30, 2008, Plaintiffs wrote again to CMS FOIA Group, appealing the Defendant's failure to supply the requested documents within the time frame specified by law. (PSOF 2; DRSOF 2.)

It is the responsibility of each FOIA analyst to send the requester an acknowledgment letter and to refer the FOIA request to the CMS components likely to have responsive records. (DSOF 4; PRSOF 4.) On February 17, 2009, CMS wrote to Plaintiffs to acknowledge receipt of the FOIA request. (PSOF 3; DRSOF 3.) The letter explained that, due to a very heavy volume of FOIA requests, CMS was processing requests on a "first in, first out" basis. (PSOF, Ex. A.) The letter further stated: "Please be assured that a search has been initiated for records falling within the scope of your request. If any such records are located, they will be reviewed as soon as possible, and you will be notified of our decision regarding release or non-release of those documents." (*Id.*) The letter advised Plaintiffs of the process for expediting their request if necessary. (*Id.*) The letter also advised Plaintiffs of CMS's policies regarding fees charged for processing requests. (*Id.*) Prior to receipt of CMS' February 17, 2009 letter, on February 6, 2009, Plaintiffs had filed the pending action. (Doc. No. 1.) Patricia Mantoan, an attorney in the General Law Division of the Office of General Counsel ("OGC"), learned of Plaintiffs' lawsuit on February 18, 2009, when she received a copy of the Complaint by electronic mail from the U.S. Attorney's Office in Tucson, Arizona. (DSOF 9; PRSOF 9.) The CMS FOIA Group did not become aware of Plaintiffs' lawsuit until February 18, 2009, when two staff persons in the CMS FOIA Group received email notification from Ms. Mantoan. (DSOF 8, 9; PRSOF 8, 9.)

On that same date, Plaintiffs' request was referred to the Center for Medicare Management ("CMM") and the Office of

Financial Management ("OFM") for searches for responsive records. (DSOF 4; PRSOF 4.) CMM serves as the focal point for all CMS interactions with health care providers, intermediaries, carriers, and Medicare Administrative Contractors ("MACs") for issues relating to Medicare fee-for-service ("FFS") policies and operations. (*Id.*) OFM has responsibilities for the Medicare Secondary Payer Recovery Claims program. (*Id.*)

On February 24, 2009, Plaintiffs responded to Defendant's letter of February 17, 2009. Plaintiff noted the filing of their Complaint in this action and provided further information regarding their entitlement to a waiver of fees for the requested documents. (PSOF 4; DRSOF 4.)

On February 25, 2009, CMM notified the FOIA Group that they did not have any responsive records. (DSOF 10; PRSOF 10.)

In March 2009, OFM referred Plaintiffs' request to OGC, which may handle litigation involving recovery under the Medicare Secondary Payer program. (DSOF 11; PRSOF 11.) The request was then circulated to the ten OGC regional offices and the OGC Central Office.

In early April, 2009, OFM informed the CMS FOIA Group that it did not have any responsive records. (DSOF 12; PRSOF 12.)

In early April 2009, OGC informed the CMS FOIA Group that it did not have any directly responsive records, but that it was able to find a court decision on a recovery case in West Virginia. (DSOF 13; PRSOF 13.) The CMS FOIA Group conducted additional research and retrieved two additional court decisions cited in the case provided by OGC. (*Id.*)

On April 8, 2009, Defendant sent to Plaintiffs via overnight mail the 12 pages of responsive records and two cases printed from Westlaw. (DSOF 14; PRSOF 14.) Defendant also informed Plaintiffs that it was waiving any fees incurred in providing the documents. (*Id.*)

## STANDARD OF REVIEW

In deciding a motion for summary judgment, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Eisenberg v. Insurance Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987).

Summary judgment is appropriate if the pleadings and supporting documents "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those "that might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party moving for summary judgment initially must demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. The moving party merely needs to point out to the Court the absence of evidence supporting its opponent's claim; it does not need to disprove its opponent's claim. *Id.; see also* Fed.R.Civ.P. 56(c). If a moving party has made this showing, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *See also Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Brinson v. Linda Rose Joint Venture,* 53 F.3d 1044, 1049 (9th Cir.1995).

The ultimate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251, 106 S.Ct. 2505.

## DISCUSSION

Plaintiffs allege that Defendant violated the timeliness requirement of the FOIA. Plaintiffs further allege that they are entitled to an award of attorneys' fees incurred in bringing this action. In response to Plaintiffs' Motion, Defendant contends that Plaintiffs' action is moot and should be dismissed and that Plaintiffs' request for fees should be denied. Defendant further moves for summary judgment on the ground that it has discharged its obligation under FOIA and is therefore entitled to dismissal of the case against it.

### 1. Timeliness Requirements of FOIA [2]

A federal agency must "promptly" make available records properly requested by members of the public. *See* 5 U.S.C. § 552(a)(3)(A). Upon receipt of a request for records, the agency must "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) ... whether to comply with such request and shall immediately notify the person making such request of such determination and the reasons therefor, and of the right of such person to appeal to the head of the agency any adverse determination." 5 U.S.C.

§ 552(a)(6)(A)(i). The agency must make a determination with respect to any appeal within twenty days after receipt of the appeal. *See* 5 U.S.C. § 552(a)(6)(A)(ii). In "unusual circumstances," [3] the 20–day time limit for an agency's response to a FOIA records request may be extended by "written notice to the person making such request setting forth the unusual circumstances for such extension and the date on which a determination is expected to be dispatched." 5 U.S.C. § 552(a)(6)(B)(i).

If the agency does not make a timely determination regarding a records request, the requesting party may proceed as if the request had been denied. 45 CFR 5.35(a). If the agency fails to respond timely to a request for records, or to an appeal, the requesting party is deemed to have exhausted remedies and can seek relief at the next stage of the process. 5 U.S.C. § 552(a)(6)(C)(i). "On complaint, the district court of the United States in the district in which the complainant resides ... has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B).

### 2. Plaintiff's action is moot because Defendant has discharged its obligations under FOIA

It is undisputed that Defendant has conducted a reasonable search for records and

---

**2.** Plaintiffs also devote a portion of their Motion for Summary Judgment to outlining the law regarding waiver of fees associated with document production. (Doc. No. 17, pgs. 2 & 5.) However, because it is undisputed that Defendant did not charge Plaintiffs any fees for the production of their requested information, this discussion is irrelevant.

**3.** "Unusual circumstances are defined as "(I) the need to search for and collect the requested records from field facilities or other establishments that are separate from the office

processing the request; (II) the need to search for, collect, and appropriately examine a voluminous amount of separate and distinct records which are demanded in a single request; or (III) the need for consultation, which shall be conducted with all practicable speed, with another agency having a substantial interest in the determination of the request or among two or more components of the agency having substantial subject-matter interest therein." " 5 U.S.C. § 552(a)(6)(B)(iii).

provided to Plaintiffs all responsive records found. (Doc. No. 27, pg. 4; Doc. No. 28, pg. 1.) Under the law of this Circuit, Plaintiffs' action is moot. An action to compel the production of documents under the FOIA is mooted, and appropriately dismissed, when the agency in control of the requested documents delivers them to the plaintiff. *See Beech v. C.I.R.*, 190 F.Supp.2d 1183 (D.Ariz.2001), *aff'd in Beech v. C.I.R.*, 37 Fed.Appx. 324 (9th Cir.2002) (citing *Carter v. Veterans Administration*, 780 F.2d 1479, 1481 (9th Cir. 1986)); *see also Rouse v. U.S. Dept. of State*, 567 F.3d 408, 411 n. 1 (9th Cir.2009) (affirming *Carter* ).

Plaintiffs argue that a party who voluntarily ceases unlawful conduct after the other party has filed suit falls within the voluntary cessation exception to the mootness doctrine, and that the voluntary cessation doctrine has been applied in FOIA cases. (Doc. No. 27, pg.5.) Plaintiffs do not offer any case law from this jurisdiction to support that assertion, citing instead to the federal districts of the D.C. Circuit and Oregon. These cases apply the voluntary cessation doctrine where "an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials," noting that "a party's challenge to the policy or practice cannot be mooted by the release of the specific documents that prompted the suit." *Payne Enterprises, Inc. v. United States.*, 837 F.2d 486, 491 (D.C.Cir.1988). While there is some case law in this Circuit suggesting that an agen-

cy's pattern and practice of delayed responses to FOIA requests may be held to violate the FOIA, *see Mayock v. Nelson*, 938 F.2d 1006, 1007 n. 1 (9th Cir.1991) (noting district court's determination that, because the complaint alleged a recurring "pattern and practice" of FOIA violations, the plaintiff had standing and his claims were not moot), Plaintiffs have not presented sufficient evidence of a "pattern" of delayed responses by Defendant. Plaintiffs do not offer any evidence in support of their claim that they have "made FOIA requests to Defendant in the past and [expect] to do so in the future, when [they] would again face delays resulting from Defendant's non-compliant procedures." (Doc. No. 27, pg.5.) The fact that Defendant stated in its February 17, 2009 letter to Plaintiffs that it processes FOIA requests on a "first in, first out" basis does not amount to a factual showing that Defendant continually violates the FOIA timeliness requirements.[4] In sum, while the evidence demonstrates that Defendant did not comply with the timeliness requirements in this case, there is only a suggestion, not evidence, of other failures by Defendant.[5] *See generally Biodiversity Legal Foundation v. Badgley*, 309 F.3d 1166, 1174 (9th Cir.2002) (holding that an agency which exhibited a recurring pattern of correcting regulatory violations immediately after the commencement of litigation could be challenged, as an exception to the mootness doctrine, where challenging party presented other, similar cases as evidence). Thus, Plaintiffs have not met

---

4. To the contrary, a "first-in, first-out" approach to handling FOIA requests was approved by the Ninth Circuit in *Exner v. Federal Bureau of Investigation*, 542 F.2d 1121, 1123 (9 Cir.1976).

5. Defendant cited to information from the Department of Health and Human Services

demonstrating that CMS has increased the number of FOIA requests it processes each year and is taking affirmative steps to reduce backlog and streamline the FOIA process, which further undercuts Plaintiffs' allegation that Defendant is engaged in a pattern and practice of deliberately delayed responses to FOIA requests. (Doc. No. 28, pgs.3–5.)

their burden of proof for summary judgment.

### 3. Plaintiffs are not eligible for an award of attorneys' fees

■ Although Plaintiffs' FOIA claim is moot, they may nonetheless pursue a claim for attorneys' fees incurred in bringing this action. Attorney fee issues are ancillary to the underlying action and survive independently under the court's equitable jurisdiction. *See Carter v. Veterans Administration*, 780 F.2d 1479, 1481 (9th Cir. 1986). The FOIA attorney fee provision requires courts to engage in a two-step inquiry: first, whether the plaintiff is eligible under the statute for an award of fees; and second, whether the court in its discretion finds the plaintiff entitled to an award of fees. *See Church of Scientology of California v. U.S. Postal Service*, 700 F.2d 486, 489 (9th Cir.1983). Because the Court concludes that Plaintiffs are not eligible for attorneys' fees, it does not reach the issue of Plaintiffs' entitlement.

Prior to its most recent amendments, the FOIA had a basic fee provision: "The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed." *Oregon Natural Desert Ass'n v. Locke*, 572 F.3d 610, 614 (9th Cir.2009) (citing 5 U.S.C. § 552(a)(4)(E) (prior to amendment)). Whether a party had substantially prevailed such that the party was eligible for a fee award was examined under a court-determined legal framework that analyzed: (1) whether the suit was reasonably necessary to obtain the information; and (2) whether the suit had a substantial causative effect on the release of the documents in question.[6] *See Church of Scientology*, 700 F.2d at 489. However, the current version of FOIA, signed into law on December 31, 2007, amended the attorneys' fee provision and provided a statutory definition of "substantially prevailed," thereby changing the legal standard regarding a party's eligibility for an award of attorneys' fees. *See Oregon Natural Desert Ass'n v. Locke*, 572 F.3d 610, 614–15 (9th Cir.2009). FOIA currently provides:

> The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.
>
> (ii) For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either—
>
> (I) a judicial order, or an enforceable written agreement or consent decree; or
>
> (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

5 U.S.C. § 552(a)(4)(E)(ii). This amendment was designed to ensure that FOIA complainants could rely on the "catalyst theory" in order to become eligible for an award of attorney fees. *See Oregon Natural*, 572 F.3d at 614–16. The "catalyst" theory "posits that a plaintiff is a 'prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 601, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). In the amendments to the FOIA, the "catalyst

---

**6.** Both parties briefed the attorneys' fees issue in this case pursuant to the old legal standard (presumably because the issue was largely briefed before the Ninth Circuit issued its decision in *Oregon Natural*) although Plaintiffs contended it was no longer the current legal standard. (Doc. No. 24, pgs. 6–11; Doc. No. 27, pgs. 6–15; Doc. No. 28, pgs. 5–7.)

theory" is incorporated into the statute at 5 U.S.C. § 552(a)(4)(E)(ii)(II).

Accordingly, under the current version of 5 U.S.C. § 552(a)(4)(E)(ii), Plaintiffs are eligible for an award of attorneys' fees if (a) they have obtained a judicial order granting them relief, or (b) Defendant voluntarily changed its position as a result of Plaintiffs' complaint. Neither applies in the instant case. First, the Court has not issued an order granting Plaintiffs relief. Second, Plaintiffs' lawsuit did not bring about a voluntary change in Defendant's conduct. It is undisputed that Defendant initiated its search for records requested by Plaintiffs on or before February 17, 2009. This search led to Defendant's final response to Plaintiffs' request for records. It is also undisputed that Defendant did not learn of Plaintiffs' lawsuit until February 18, 2009, after the record search had been initiated. Although Plaintiffs speculate that Defendant was motivated by the litigation to respond to Plaintiffs' request as soon as possible, Plaintiffs have not presented any factual evidence to support that assertion. To the contrary, Defendant's February 17, 2009 letter stated that any records located would be "reviewed as soon as possible" and that Plaintiffs would be notified accordingly. Accordingly, Plaintiffs have failed to demonstrate that they have substantially prevailed.

### RECOMMENDATION

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order DENYING the Motion for Summary Judgment filed by Plaintiffs on April 3, 2009 (Doc. No. 17), GRANTING the Cross–Motion for Summary Judgment filed by Defendant on June 4, 2009 (Doc. No. 24) and DISMISSING WITH PREJUDICE the claims alleged against Defendant.

Pursuant to 28 U.S.C. § 636(b), any party may serve and file written objections within 10 days of being served with a copy of this Report and Recommendation. If objections are not timely filed, they may be deemed waived. If objections are filed, the parties should use the following case number: **CV–09–76–TUC–CKJ.**

DATED this 31st day of July, 2009.